UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACIE BROWN,

        Plaintiff,

v.

CITY OF ALLEN PARK, a municipal
corporation,

        Defendant.

_____/

Case No. 17-12403

Honorable Nancy G. Edmunds

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [26]

On July 25, 2017, Plaintiff Tracie Brown ("Plaintiff"), filed a three-count complaint against the City of Allen Park ("City" or "Defendant") alleging (1) hostile environment sexual harassment, (2) sex discrimination, and (3) retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, arising out of Plaintiff's employment with the City of Allen Park's Police Department ("Police Department"). Defendant moves for summary judgment pursuant to the Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendant's motion is GRANTED IN PART, as to Plaintiff's charge of sex discrimination, and is DENIED IN PART, as to Plaintiff's other two counts, hostile environment sexual harassment, and retaliation.

## I.   BACKGROUND

In April 2000, the Police Department hired Plaintiff. (Personnel Record, Dkt. 28-2.) The Police Department employs about thirty-five officers, a majority of them male. (Pl. Resp., Dkt. 28, at 12; PgID 543.) Plaintiff served as one of only a handful of female officers

for the term of her employment and often as the only female officer. (Pl. Compl., Dkt. 1, at 2.)

Plaintiff alleges sexual commentary was common from all levels of management. She asserts the Police Department broadly ignores the sexual harassment policy and prior to her complaint never trained on it. Plaintiff alleges Sgt. Daniele Cerroni ("Cerroni"), in a series of incidents, touched and assaulted her on several occasions and over many years. The last assault occurred in November 2015, when Cerroni allegedly choked Plaintiff and cut off her air supply. In response to this final assault, Plaintiff reported in a formal complaint, all of Cerroni's previous alleged assaults on her, as well as the problematic commentary of Lieutenant Williams ("Williams"), her superior. In response, the Police Department assigned and empowered Williams himself to look into her complaint against Cerroni. Plaintiff alleges Williams's investigation was only window dressing, that his appointment was an act of retaliation, and that it contributed to the continued hostile work environment she had experienced at the Police Department over the previous several years.

## A. Sergeant Cerroni's Alleged Choking of Plaintiff

Daniele Cerroni served in the Allen City Police Department as an Administrative Sergeant, responsible for the in-house computer systems and the computers on the police cars. (Cerroni Dep., Dkt. 29-2, at 6; PgID 1205.) On November 13, 2015, Plaintiff was in a hallway outside Cerroni's office when she had a passing exchange with him about the unusual behavior of some people in the building's lobby. (Brown Dep., Dkt. 29-1, at 128; PgID 1144.) As Plaintiff turned away, Cerroni allegedly grabbed her by her neck and cut off her airway. Plaintiff claims she could not breathe and had to struggle away. She also

reportedly unsuccessfully attempted to knee Cerroni in her struggle to break free. (*Id.* at 129; PgID 1145.)

Cerroni stated that Lieutenant Soden ("Soden") witnessed the incident. Cerroni told Williams that Soden said to him "she almost knee'd you." (Williams Dep., Dkt. 29-6, at 128; PgID 1542; 41:40 of the Second Video of Cerroni). Immediately after the choking, Plaintiff reports speaking with Soden in the presence of Cerroni, asking him if her neck was red. Soden reportedly laughed in response and instead Cerroni replied that Soden would take Cerroni's side. (Brown Dep., Dkt. 29-1, at 130; PgID 1146.) Soden, who is Plaintiff's supervisor, denies having witnessed the assault. (William's Internal Investigation Report, Dkt. 26-5, at 26; PgID 341.)

Later that day, Plaintiff reports Cerroni stated "Tracie, when you get done in the lobby I need to see you because that really got me going." (*Id.*) Cerroni, in his deposition would not answer questions regarding the November 13, 2015 incident invoking his Fifth Amendment privilege. (Cerroni Dep., Dkt. 29-2, at 30-31; PgID 1229-30.)

A permanently placed video camera which covers the hallway should have recorded the exchange between Plaintiff and Cerroni. The Police Department's Police Chief Wilkewitz ("Chief Wilkewitz"), told Plaintiff the video camera was improperly pointed toward the corner and failed to captured the alleged assault. Plaintiff nonetheless asked to see the video in order to verify its substance. It was never shown to her and was subsequently destroyed.

### B. Plaintiff Reports Cerroni and Williams

Approximately two weeks later, on December 7, 2015, Plaintiff verbally reported the choking incident to her superior Sgt. Christopher Granica ("Grancia"). She also reported

to Granica, that Williams, another of her superiors, had recently asked her if she liked to masturbate while writing up sexual assault reports. Granica properly filed Plaintiff's formal sex harassment complaints, including that Plaintiff had named only two people, Williams and Cerroni.

Within days Plaintiff wrote up and submitted to her employer a record of twelve incidents of "unwanted sexually harassing contacts" Cerroni had with her. (Brown's Cerroni Account, Dkt. 26-4, at 2; PgID 311.) The first alleged incident[1] occurred in 2000, at a time she was beginning a flirtatious relationship with Cerroni[2]. However the remaining eleven incidents occurred in the two and a half year period between May 2013 and November 2015. These included allegations Cerroni grabbed Plaintiff's hand and put it on his erect penis, that Cerroni grabbed the back of Plaintiff's neck and pushed her head down toward his genitals while ignoring her verbal refusals, that Cerroni aggressively touched his own genitals in front of Plaintiff and moaned, that Cerroni asked Plaintiff to visit his office because he was alone for the day, that Cerroni showed Plaintiff his erect penis, that Cerroni unzipped his pants and smiled at Plaintiff during a work conversation, that Cerroni on his birthday put his groin near Plaintiff's face and asked if she wanted to "give him a present," that Cerroni exposed his bare chest to Plaintiff and asked Plaintiff to sit on his lap stating

---

[1] According to the document, in June 2000, while Cerroni was Plaintiff's field training officer, he put his hand on her leg and pulled her by the back of her hair for driving in the wrong direction. (Brown's Cerroni Account, Dkt. 26-4.)

[2] Plaintiff and Cerroni had a brief sexual encounter in late 2000 or early 2001, in which they kissed in a casino parking lot, while off-duty. Their relationship from that point until 2010 remained verbally flirtatious although never again physical. In 2010 Plaintiff states she put a conclusive end to their flirtatious relationship and treated Cerroni exclusively as a co-worker from that point forward.

in response to her request for her coffee that he would "give her anything I wanted" (Plaintiff has an audio recording of this interaction), and that Cerroni pulled up his pant leg and insisted that she touch his leg.

Chief Wilkewitz, responded to Plaintiff's complaint, by appointing Williams to investigate Cerroni. (Williams Dep., Dkt. 29-6, at 37-38; PgID 1451-53.) Plaintiff's union requested the investigation be conducted by a neutral outside party. Plaintiff raised her own objections to Williams conducting the investigation. Despite these concerns, Chief Wilkewitz insisted Williams would conduct the investigation.

Williams performed a voluminous six-week investigation into Plaintiff's claims against Cerroni. Plaintiff avers Williams investigation was not even-handed, sought to protect Cerroni and the police department, failed to look into questions of a department wide culture of harassment, and treated Plaintiff with hostility. For instance, Williams failed to include in his report that Williams himself had observed Cerroni make sexual comments, jokes, and remarks. (Williams Dep., Dkt. 29-6, at 43-44; PgID 1457-58.) Williams avoided asking witnesses, Plaintiff's peers, if they had observed sexual behaviors within the police department. Williams obfuscated his intent when interviewing a citizen who interacted with Plaintiff immediately following the choking incident stating "it was important to me not to damage our image any more than it was." (Williams Dep., Dkt. 29-6, at 67; PgID 1481.) Williams omitted from his report that Cerroni admitted he may have had an erection during his interactions with Plaintiff stating "[h]e's a man. You can have an erection every day." (Williams Dep., Dkt. 29-6, at 88; PgID 1502.)

Williams concluded the six-week investigation and issued a 36-page report with his findings and conclusions. (William's Internal Investigation Report, Dkt. 26-5.) Williams

determined of the twelve interactions Plaintiff reported, only the choking incident could be substantiated. Williams determined Cerroni had violated internal employment rules regarding conduct unbecoming department personnel. Williams however found no proof of sexual harassment. The Police Department gave Cerroni three days paid time off and transferred him within his rank away from the Administrative Sergeant position. The Police Department prevented Cerroni from working as Plaintiff's superior on the regular work schedule, however, overtime was not similarly limited. In order for Plaintiff to pick up overtime hours Plaintiff risked Cerroni acting as her direct supervisor which occurred more than ten times before Plaintiff determined she would no longer take overtime because of the likelihood of having to interact with Cerroni. The City Administrator reported he never read the investigation report. Plaintiff summarizes the investigation as a "sham" and "window dressing." (Pl. Resp., Dkt. 28, at 21.; PgID 552.)

**C.  Environment at the Allen Park Police Department**

Cerroni's behavior did not occur in a vacuum. As a result of Plaintiff's complaint, the Police Department underwent sexual harassment training, for the first time in 25 years. Both parties describe the general prior atmosphere at the Police Department as a place where sexual, crude commentary was prevalent and where Plaintiff was the lone female. Plaintiff avers the workplace culture broadly sexualized women (including underage female victims) and treated them with hostility. She reports specific unprofessional sexualized behavior on the part of her co-workers and superiors, all of whom are male.

Williams, the department's second-in-command, acknowledged the prevalent use of foul and crude language at the station.[3]  Williams, made  comments sexualizing young female victims.  Williams commented on sexual pictures of a 15 year old victim stating "On yeah, she's horny."  When Williams saw a scantily dressed 14 year old girl in the station, he twice stated "oh yeah, whose your daddy."  The girl had been brought to the station after being found in a car under duress with three adult males.  In November 2015, Williams asked Plaintiff if she masturbated while writing up criminal sexual conduct reports. Finally, Williams dismissed Plaintiff's complaint against Officer Sean Scott ("Scott") without doing an investigation calling her paranoid, when she reported Scott stated at the scene of a call, "That's okay. I've got this. Just look at you. You're useless anyways and you're a female." (Pl. Dep., Dkt. 29-1, at 33; PgID 1049.)

Plaintiff reports a co-worker Steve Samborski commented in front of Plaintiff's supervisor, Soden, as well as two other officers, about a news anchor's breasts and how he would like to have sex with her[4].  He asked Plaintiff if she shaved her "pussy" in front of the same group, again including her superior Soden.  Samborski additionally showed Plaintiff sexual photos of his girlfriend's naked body after explaining his sexual experiences with her the night before.  (Pl. Dep., Dkt. 29-1, at 26; PgID 1042.)  Plaintiff reports another

---

[3] Defendant asserts Plaintiff was a willing participant in the sexual commentary around the station.  Plaintiff avers she was not a willing participant.  Plaintiff claims her actions were merely her attempts to thrive in an all-male environment hostile to her.  The Court, in reviewing Defendant's summary judgment motion, must take the evidence in the light most favorable to Plaintiff, giving Plaintiff the benefit of all reasonable inferences, and weights Plaintiff's behavior in that light.

[4] Plaintiff's deposition reports him stating "I know what I'd like to do to her.  I could give it to her good.  All I have to do is find the little man in the canoe."  (Pl. Dep., Dkt. 29-1, at 24; PgID 1040.)

co-worker, Scott, commented that women cannot drive and that he more than once stated women did not belong in law enforcement. He additionally openly expressed his own self-consciousness about having a small penis in front of a group of officers, including Plaintiff and Plaintiff's superior Soden. Scott made sexual comments about the news anchor in an open setting within the police department. Officer Madrigal commented more than once to Plaintiff at work about how many orgasms his wife had during sex. Plaintiff reports that Chief Wilkewitz told a dirty offensive joke to a group including herself and some co-workers at the front desk area.

The Police Department harassment policy requires employees and supervisors to report each of these incidents, and any others they had witnessed regardless of whether they had personally been offended or whether the comments were directed at them. However the entire command structure ignored the policy. This collective silence and the ubiquitous nature of the sexual comments threatened to complicate Williams's investigation into Plaintiff's complaint. When Williams began to conduct interviews, many of the officers worried they would be in trouble for not having reported witnessing sexual commentary in the workplace earlier. Chief Wilkewitz empowered Williams to assure all the officers that any failure to report as required under the harassment policy would not be disciplined.

In addition to these comments, and the failure to train or enforce the sexual harassment policy, Plaintiff presents evidence that the few prior female officers departed the Police Department after filing sex harassment charges. Plaintiff additionally presents an affidavit from one of these previous female officers corroborating Plaintiff's sentiments regarding the general tenor and tone of the sexualized culture in the Police Department.

**II.   LEGAL STANDARD**

Under the Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule 56 [ ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.,* 477 F.3d 854, 861 (6th Cir. 2007).  Yet Plaintiff may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1).  Finally, "[a] mere scintilla of evidence is insufficient" to withstand a summary judgment motion; rather, "there must be evidence on which the jury could reasonably find for the non-moving party." *Smith Wholesale,* 477 F.3d at 861 (internal quotation marks and citation omitted).

## III.  ANALYSIS

### A.  Did Plaintiff Satisfy EEOC Procedural Requirements?

#### I.  Plaintiff Exhausted Her Administrative Remedies

A plaintiff suing under federal civil rights laws must first exhaust their administrative remedies before bringing the suit in federal court.  Congress gave initial enforcement

responsibility for challenging prohibited employment discrimination under Title VII of the Civil Rights Act of 1964 to the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. §2000e-5(e)(1). *Parry v. Mohawk Motors of Mich. Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Claims not included in the initial EEOC charge may not subsequently be brought in a federal complaint. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. §2000e-5(f)(1)) ("As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge.").

This requirement exists so that the EEOC will have an opportunity to convince the parties to enter into voluntary settlement through conference, conciliation, and persuasion, which is the preferred means of disposing of such claims. *Parsons v. Yellow Freight Sys., Inc.*, 741 F.2d 871, 873 (6th Cir. 1984). In order to satisfy this exhaustion requirement, an employee's EEOC charge, must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Younis*, 610 F.3d at 361 (citing 29 C.F.R. §1601.12(b)). Allowing a Title VII action to include claims outside the charge would deprive employers of notice and "frustrate the EEOC's investigatory and conciliatory role." *Id.* at 362.

Courts, however, liberally construe employee's EEOC complaints, to encompass all claims that are reasonably related to the factual allegations in the EEOC charge. *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). In *Younis*, the Sixth Circuit established a test for determining whether a plaintiff has properly exhausted her administrative remedies with the EEOC. A plaintiff can exhaust their administrative remedies before bringing a Title VII complaint in two ways, either (1) by explicitly stating a claim in the charge, for example by checking the appropriate claim's box, or (2) by stating

"facts related with respect to the charged claim" in a manner that would "prompt the EEOC to investigate a different, uncharged claim. . . ." *Younis*, 610 F.3d at 362 (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)). Here, Plaintiff used both methods. Plaintiff checked the appropriate boxes for her sex discrimination and retaliation claims, thus explicitly stating both counts in the EEOC charge, prior to bringing her complaint. (EEOC Charge, Dkt. 26-13, at 2; PgID 439.) Regarding her third count, for hostile work environment, Plaintiff relies on the second method of exhaustion, stating sufficient facts related to the claim to prompt the EEOC to investigate.

In order to establish a claim of hostile work environment, a plaintiff must present evidence of harassment that unreasonably interferes with work performance and creates an objectively intimidating, hostile, or offensive work environment. *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008). Plaintiff's EEOC Charge raises facts that lead to objective concerns about an intimidating and offensive work environment.

Plaintiff's EEOC charge describes Cerroni's assaultive behavior and additionally references other problematic employer behaviors. The EEOC Charge states "I had been repeatedly subjected to sexual harassment by a superior." Plaintiff then wrote "I reported the [choking] incident, along with a history noting a pattern and practice of harassment. . . .[t]he Chief *assigned an investigator known for making lewd sexual comments to me*. Due to the assault and *history of harassment*, I was forced to take medical leave. . . .I believe I have been discriminated and retaliated against, subjected to sexual harassment and denied the right to file for worker's compensation because of my sex (female) and in retaliation for participation in a protected activity." (Dkt. 26-13, at 2-3; PgID 439-

40)(emphasis added).  The EEOC Charge states the discrimination began June 1, 2000 and continuing until June 1, 2016.[5]

According to Defendant, "[t]he only consistency between the EEOC charge and the federal Complaint are the allegations against Dan Cerroni and the pattern and practice of harassment attributed to him."  (D. Mot. Sum. J., Dkt. 26, at 17; PgID 265.)  Defendant asserts Plaintiff's EEOC charge alleges " 'repeated harassment. . . .by a supervisor' and describes, as examples, the conduct of which Dan Cerroni is accused.  It further alleges retaliation only in the form of the denial of an application for worker's compensation benefits."  (D. Mot. Sum. J., Dkt. 26, at 16; PgID 264) (quoting Plaintiff's 09/07/2016 EEOC charge, Dkt. 26-13.)

These assertions, however, overlook the objective hostility in assigning an investigator known for making lewd sexual comments.  The choice of investigator is related to the sex discrimination claim but would prompt the EEOC to investigate the different, uncharged claim of a hostile work environment.    *Younis*, 610 F.3d at 362.  The individual, the Police Department empowered to resolve Plaintiff's brutal and violent assault, signals exactly the type of intimidating, hostile, or offensive work environment now being asserted.  Failure to

_____

[5]Plaintiff presents a second document which she had previously submitted to the EEOC, notarized on September 2, 2016 ("Original Charge"), a few days before she filed what became the final EEOC charge.  The Original Charge, which the EEOC never accepted, specifically mentions her hostile work environment claim, that superiors have ignored her complaints, an inadequate investigation into the harassment incident, and retaliatory action for her filing the complaints.  (Original Charge, Dkt. 28-19, PgID 911-13.)  Plaintiff swears in an affidavit, the EEOC investigator "let me know that she would want to re-word the [original] charge for  reasons I did not understand and I don't really recall her explaining. She did so, and I believed that she knew what she was doing."  (Pl. Affidavit, Dkt. 28-18, at 2; PgID 909.) Plaintiff re-wrote the document, without the aid of counsel, to match the EEOC's recommendation which resulted in the final EEOC Charge being filed.

assign a neutral investigator, and to instead empower someone sexually hostile, can also be reasonably interpreted as retaliation for filing the formal complaint.

Construing Plaintiff's EEOC charge liberally the Court finds Plaintiff's EEOC Charge listing sixteen years of discrimination[6], references to a "history" and "pattern and practice of harassment", as well as problems beyond just Cerroni's behavior, including her interactions with the investigator, chief of police, and human resources, could reasonably be expected to lead the EEOC to investigate a hostile work environment, in addition to the explicitly listed retaliation, and sex discrimination claims. Although the first draft of the Plaintiff's charge was far more specific, as was Plaintiff's November 14, 2016 letter[7] in response to EEOC's request that Plaintiff further explain her charge, even on its own Plaintiff's EEOC charge meets the necessary burden for exhaustion of administrative remedies for all three counts brought in this complaint.

The Court declines to dismiss Plaintiff's three counts as outside the scope of Plaintiff's EEOC charge. *See Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 509-10 (6th Cir. 2011) (the Sixth Circuit found the Plaintiff's EEOC filing contained sufficient information to allege a hostile work environment claim where the filing contained a detailed account of a racially and sexually hostile incident between the plaintiff and one of her supervisors and alleged the discrimination was continuing action); *See also Spence v. Donahoe*, 515 Fed.Appx.

---

[6] Plaintiff's Original Charge, prior to the EEOC's recommended rewrite, checked the box that the discrimination was a "continuing action"

[7] The letter states "Charged Party has solely investigated claims that one individual has sexually harassed my lcient. It has not investigated or responded to the allegations of departmental gender discrimination or hostile work environment." (Exhibit S, Dkt. 28-20, at 2.)

561, 571 (6th Cir. 2013) (the Sixth Circuit held an employee properly exhausted administrative remedies for a hostile work environment claim where the claim alleged "harassment" and "intimidation.")

### ii. Plaintiff's EEOC Charge Was Timely

Title VII requires employees to file a charge with the EEOC within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed her Title VII charge with the EEOC on September 7, 2016. Therefore, any claim for harassment or discrimination must be based on conduct that occurred after November 12, 2015, which is 300 days prior to Plaintiff's EEOC filing. Defendant argues that, except for the alleged choking incident, all other activity, including all department-wide sexual harassment claims, fall outside the statue of limitations period and thus are barred. (*Id.*) This Court disagrees.

Plaintiff filed three Title VII counts in her complaint against Defendant. Plaintiff's charge of retaliation is based on Defendant's response to the alleged November 12, 2015 assault. Plaintiff primarily claims the inflammatory nature and inadequacy of the investigation into her assault claims constitute retaliation. The investigation, including who was assigned to conduct it, is within the 300 day limitation period. The retaliation claim is therefore timely.

The same is true for much of the alleged conduct contained in Plaintiff's charge of sex discrimination; although not quite all. Plaintiff's sex discrimination claim includes the allegation of "denial of commendation to Plaintiff on equal terms with her male colleagues is sex discrimination." (Pl. Compl. ¶ 58., Dkt. 1, at 11.) This event took place in November 2014, which is outside the limitations period. Plaintiff's sex discrimination charge as relates

14

to this employment action, is untimely for Title VII purposes. However, Plaintiff's sex discrimination count also includes the allegation of "[t]he intentional assignment of a reported harasser to investigate Plaintiff's claims of harassment." (Pl. Compl., Dkt. 1, at 11; PgID 11.) This occurred within the 300 day limitations period and as relates to these facts, Plaintiff's sex discrimination complaint is timely.

Finally, Plaintiff's charge of hostile environment sexual harassment, looks back further than the 300 day limit. Plaintiff invokes the continuing violations doctrine claiming the hostile work environment constituted a single unlawful employment practice. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day.") Plaintiff argues her Title VII claim is not time-barred, because "the [EEOC] charge was filed within 300 days of the event of November 15, 2016, all relevant prior events are also timely." (Pl. Resp., Dkt. 28, at 25; PgID 556.)

Hostile work environment claims "involve[ ] repeated conduct" and require a victim to demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Morgan*, 536 U.S. at 115-16 (citations and quotation marks omitted). "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117; *See Jordan v. City of Cleveland*, 464 F.3d 584, 596-97 n.17 (6th Cir. 2006).

Here, Cerroni's alleged sexual assault, Cerroni's sexualized comment following the assault, and the Chief's assignment of a reported harasser to investigate, all fall within the 300 day period and are part of Plaintiff's hostile work environment claim. Plaintiff alleges incidents, related to the claim of hostile work environment sexual harassment, which occurred within the filing period under the continuing violation doctrine. Defendant counters that the Cerroni's choking incident was "discrete, extreme and criminal" and, as such, should be isolated from the ongoing department-wide verbal harassment Plaintiff reports.

The Sixth Circuit states, "when [a plaintiff] seeks redress for discrete acts of discrimination or retaliation, the continuing violation doctrine may not be invoked to allow recovery for acts that occurred outside the filing period." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (citing *Morgan*, 536 U.S. at 113). The *Morgan* court distinguishes hostile work environment claims from claims based on discrete acts, recognizing that:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes an separate actionable "unlawful employment practice."

*Id*. at 114. The *Morgan* court conversely states,

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. . . .The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. . . .Such claims are based on the cumulative effect of the individual acts.

*Id*. at 115  (citations omitted).

Here, Defendant mistakes the substance of Plaintiff's hostile work environment claim. Included within her claim, in fact perhaps even primary to her claims, is that Defendant's

investigation, which took place within the 300 day limitation period was as much part of the hostile work environment as Cerroni's alleged physical assault. Included in Plaintiff's hostile work environment count she explicitly cites Defendant's "[a]ssigning as the 'investigator' of the harassment one of just two people named as a harasser in the initial report. . . .[c]onducting an intentionally slanted investigation. . . .[c]arrying out intimidation of a male reporting witness. . . .[s]uppressing/ignoring a subsequent complaint of witness intimidation as to the 'investigator'. . . .[f]ailing to follow Department policy on the timeliness of an investigation. . . .[s]eeking, in the course of the investigation, negative information on the Plaintiff and avoiding seeking key corroborating facts." (Pl. Compl. ¶45 (e-j), Dkt. 1, at 9.) Viewing the evidence in a light most favorable to Plaintiff, the Court finds the myriad alleged incidents, including Cerroni's other actions, the choice of investigator, substance of the investigation, a culture of ignoring the sexual harassment policy, and persistent sexually based offensive, crude, and vulgar commentary degrading to women and directed at Plaintiff, sufficiently demonstrate a longstanding policy tolerant of an objectively hostile environment. *See Wu v. Tyson Foods, Inc.*, 189 F.App'x 375, 379 (6th Cir. 2006) (stating a plaintiff must "show that the employer has a longstanding and demonstrable policy of discrimination against the class of which the plaintiff is a part").

Plaintiff properly applies the continuing violation doctrine to her hostile work environment claim. The Court considers all of the incidents, even those which occurred prior to November 12, 2015, part of Plaintiff's hostile work environment claims. *See Austion v. City of Clarksville*, 244 Fed.Appx. 639, 650 (6th Cir. 2007) (finding plaintiff can rely on past incidents, including time-barred acts of discrimination, in establishing a hostile work environment claim).

**B.    Plaintiff's Hostile Work Environment Claim**

"A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999).  Title VII "offers employees protection from a workplace [ ] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Defendant's motion for summary judgment asserts Plaintiff failed to establish the *prima facie* case for this claim.  The elements of a prima facie case of a hostile work environment based on sex, under Title VII, require:

(1) she belong to a protected class,

(2) she was subjected to unwelcome harassment,

(3) the harassment was based on sex,

(4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and

(5) the defendant knew or should have known about the harassment and failed to act. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013); *see also Williams*, 187 F.3d at 560-61.

Defendant disputes the third, fourth, and fifth elements of Plaintiff's hostile work environment claim.  Drawing all reasonable inferences in favor of Plaintiff, genuine issues of material fact exist as to each of these elements such that summary judgment is not appropriate.

**I. Material Issue of Fact Exist as to Whether the Alleged Harassment was "Because of Sex" as required under Title VII**

Under Title VII "[i]t shall be an unlawful employment practice for an employer. . . .to discriminate against any individual because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e - 2(a)(1). Defendant argues that Plaintiff is unable to satisfy the requirement that the offensive conduct occurred "because of sex." (Dkt 26, at 28; PgID 276.) Defendant contends that "[w]ith perhaps one exception, each of the sexually tinged comments on which Plaintiff relies to support her claim were either comments to which both genders were exposed or comments which had a context demonstrating that Plaintiff's gender had nothing to do with them." (Dkt. 26, at 28; PgID 276.)

The Supreme Court, held in *Oncale v. Sundowner Offshore Servies, Inc.*, 523 U.S. 75, 79 (1998), that "[t]he critical issue. . . .is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 80. The majority recognized the "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." A plaintiff may prove discrimination based on sex, by showing she was "harassed in such sex-specific and derogatory terms. . . .as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." *Id.* at 81. Alternatively a plaintiff may "offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* at 81-82. Whichever avenue a plaintiff chooses, the plaintiff "must always prove that the conduct at issue was not merely

tinged with offensive sexual connotations, but actually constituted discrimination. . . .because of. . . .sex." *Id.* at 81.

In *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263 (6th Cir. 2009), the Sixth Circuit held that the "based on sex" requirement may be met by proving that the conduct is explicitly sexual and patently degrading to women. *Id.* at 271. As a result of being exposed to such conduct, a woman "suffer[s]. . . .greater disadvantages in the terms and conditions of [her] employment than men." *Id.* A plaintiff must show that a reasonable person regardless of gender, would consider the sexually offensive conduct and comments more offensive to women than men, even if the conduct does not specifically evidence anti-female animus. *Id.* at 272.

Plaintiff's hostile work environment complaint includes several different types of alleged problematic behavior. Plaintiff alleges Cerroni committed several physical assaults against her, that some of her co-workers and superiors made explicit comments to Plaintiff regarding her own sexuality and how she groomed her genitalia, that her co-workers and superiors made regular explicit comments degrading to women generally and about female competency specifically, that superiors ignored such comments or participated, that none of those who would have been required to report such behavior under the sexual harassment policy ever did so, and finally that in response to her complaint the investigation was given to one of the superiors Plaintiff accused and that the manner with which the investigation took place represents further hostility toward women.

Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact whether she experienced explicitly sexually offensive conduct more offensive to women than men, or conduct patently degrading to women. Taking Plaintiff's

asserted facts as true, Plaintiff has presented sufficient evidence to conclude that the sexual harassment may have risen to the level of gender discrimination and that Plaintiff as the sole female officer was exposed to disadvantageous conditions of employment that her male peers were not, such that Plaintiff was being discriminated against "because of sex."

###    ii.    Material Issue of Fact as to Whether the Harassment was Severe or Pervasive

Defendant avers that Plaintiff failed to claim sufficient facts to support the fourth element, that the harassment be sufficiently severe or pervasive to alter the condition of employment and create an abusive working environment.  The Supreme Court has made clear that, while a mere utterance of an. . . .epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment to implicate Title VII, the Act is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.' " *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted).  "[S]imple teasing, offhand comments, and isolated incidents," are not actionable under this rule. *Faragher v. City of Boca Raton*, 524 U.S. 7765, 788 (1998).

"Conduct need not be both severe and pervasive to constitute a hostile environment, but may be either sufficiently severe or sufficiently pervasive." *Williams v. CSX Transp. Co.*, 533 F.App'x 637, 641 (6th Cir. 2013) (unpublished) (citing *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 717 n.2 (6th Cir. 2012)).  To satisfy this element, the harassment must be severe or pervasive in two aspects.  "Both an objective and subjective

test must be met; in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006).

Defendant argues to dis-aggregate Cerroni's behavior from the rest of Plaintiff's work environment. (Dkt. 36, at 7; PgID 2076.) Regarding the non-Cerroni behavior, Defendant claims Plaintiff has not shown sufficient frequency or severity. (Def. Mot. Sum. J., Dkt. 26, at 26; PgID 274.) Defendant asserts many of the comments Plaintiff reports are perhaps vulgar but common, and can be expected in the type of environment and circumstances of the job. Defendant's argument is essentially, other than Cerroni's behavior, the events supporting Plaintiff's hostile work environment claim, were merely offensive utterances.

The Court agrees with Defendant that Title VII is not intended to be a civility code. However a reasonable jury could certainly find that superiors who are sexually degrading to women including underage victims of sexual assault, who ask Plaintiff directly how and when she masturbates, and overlook co-workers inquiring about whether Plaintiff shaves her pubic hair, meets the standard of a hostile work place. Plaintiff finding offense and hostility in such commentary is reasonable. If true this type of persistent broadly accepted vulgar language and antagonism, from and in front of superiors, is objectively offensive conduct.

Defendant additionally too quickly sets aside Cerroni's actions, and underestimates the objectively hostile nature of assigning an alleged harasser to investigate Plaintiff's assault. A district court must consider "harassment by all perpetrators combined when analyzing whether a plaintiff has alleged the existence of a hostile work environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). "This includes 'all

incidents of alleged harassment' regardless of whether the harasser is an employee or a co-worker." *Williams v. CSX Transp. Co.*, 533 F.App'x at 641 (quoting *Williams v. Gen Motors Corp.*, 187 F.3d at 562-63).

The incidents of Plaintiff's claimed harassment include all of her accusations including Cerroni's physical assault, the assignment of Williams to investigate, and the purposeful non-reporting of crude sexual chatter in violation of the sexual harassment policy. Taken as true, a reasonable person may find this pattern of behavior humiliating. *Harris v. Forklife Sys., Inc.*, 510 U.S. 17, 23 (1993) (where the Supreme Court provided a non-exhaustive list of factors to consider when deciding whether a hostile work environment exists including "whether it is physically threatening or humiliating, or a mere offensive utterance.").

Even *Hawkins v. Anheuser-Busch, Inc.*, 517 F. 3d 321, 336 (6th Cir. 2008), which Defendant cites in support of differentiating Cerroni's actions from the other types of alleged harassment, states "[t]he degree to which a past act of harassment is relevant to the determination of whether a plaintiff's work environment is hostile is a fact-specific inquiry that requires courts to determine the relevancy of past acts on a case-by-case basis. In general, however, the appropriate weight to be given a prior act will be directly proportional to the act's proximity in time to the harassment at issue in the plaintiff's case." *Id.* at 336-37. In a two month period Williams made sexually degrading comments to Plaintiff and then the Chief elevated him to the sole workplace investigator into Cerroni's allegedly violent assault on Plaintiff. Williams sexual commentary and the Chief's assignment are both key elements of Plaintiff's hostile work environment claim, occurred in rapid succession, and give Williams' words and comments extra relevance.

"[W]hether harassment was so severe and pervasive as to constitute a hostile work environment [is] 'quintessentially a question of fact.' " *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 310 (6th Cir. 2016) (quoting *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006)).  Plaintiff describes events, when considered as a whole, that create an issue of fact for a  jury to decide whether Plaintiff experienced a hostile work environment based on sex.  *Smith*, 813 F.3d at 310.

### iii. Genuine Issues of Material Fact Exist as to Whether Defendant is Vicarious Liable for Cerroni's Behavior and to Whether Defendant is Vicarious Liable for the Behavior of other Members of the Police Department

The Supreme Court has ruled that employers are not automatically liable for sexual harassment perpetrated by their employees.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).  Only when determining employer liability may the court "conduct separate analyses based on the identity of the harasser.  *Williams  v. Gen. Motors Corp.*, 187 F.3d at 562-63.   Where an employee claims non-supervisory co-workers caused sexual harassment through a hostile work environment, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998).  Where the harassment is attributed to a supervisor with authority over the employee, a court looks first to whether the supervisor's behavior culminated in a tangible employment action.  *See Burlington Indus., Inc.*, 524 U.S. at 765.

Evaluating Plaintiff's claims depends on whether the hostile work environment claims are based on co-worker harassment or supervisor harassment.  Defendant insists Cerroni who perpetrated some of the most offensive conduct was only a co-worker despite having

a higher rank than Plaintiff. Defendant states "although Cerroni held a higher rank than Plaintiff. . . .he had no authority to make any tangible employment decisions regarding her." (Dkt. 26, at 31; PgID 279.) The Court need not make this determination. Plaintiff's deposition testimony demonstrates that her supervisor, Soden, was present during and witnessed much of the commentary made directly toward Plaintiff and failed to report such comments in direct violation of Police Department's existing sexual harassment policy. Another supervisor, Lt. Williams, participated directly in sexually explicit commentary as well. The department chief assigned Williams, an alleged harasser, to investigate Plaintiff's harassment over her objections. In other words, as alleged, supervisors were complicit, participated in, and maintained Plaintiff's hostile work environment.

Under supervisor harassment liability, and since there is no tangible employment action, Defendant may assert its affirmative defense. Where a plaintiff employee suffered no tangible employment action, the employer can defend against vicarious liability for sexual harassment by its supervisor by establishing by a preponderance of the evidence the affirmative defense set forth in *Burlington Indus., Inc. v. Ellerth*. The affirmative defense requires that the employer demonstrate two elements: (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) that plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *Burlington Indus., Inc.*, 524 U.S. at 744.

Generally, an employer satisfies the first part of the two-part standard when it promulgates and enforces a sexual harassment policy. *Thornton v. Federal Express Corp.*, 530 F.3d 451, 456 (6th Cir. 2008). "[A]n effective harassment policy should at least: (1)

require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide a mechanism for bypassing a harassing supervisor when making a complaint; and (4) provide for training regarding the policy." *Id.* (quoting *Clark v. United States Parcel Service, Inc.*, 400 F.3d at 341 (6th Cir. 2005)).

Plaintiff does not challenge the sexual harassment policy as written only whether it was enforced. Plaintiff maintains that it is a genuine issue of material fact whether Defendant took reasonable care to prevent and correct promptly any sexually harassing behavior as required for the affirmative defense. Plaintiff presents evidence that supervisors were aware of, participated in, or should have known of much of the behavior allegedly amounting to sexual harassment. Yet, they failed to respond or even follow the policy and report it. It is not enough to have the policy and procedures on paper. The policy must also function in the workplace. If true, such universal failures suggests either a poorly disseminated policy or an internal understanding throughout the supervision structure that the policy was not to be used.

Plaintiff's claims are also based on some co-worker harassment. An employer is vicariously liable for co-worker harassment of which it knew or should have known if it failed to take appropriate remedial actions and if its response exhibited manifest indifference or unreasonableness. *Hawkins v. Anheuser-Bush, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008). To establish that the employer "knew or should have known" of the co-worker harassment, the plaintiff need not necessarily have reported it to a supervisor. *Jackson v. Quanex Corp.*, 191 F.3d at 663. Where harassment is pervasive, knowledge may be imputed to the employer. *Id.* Defendant argues that the behavior the City was aware of was "at most, [

26

] knowledge of occasion juvenile, boorish and /or distasteful commentary, not sexually hostile conduct that is extreme enough to alter the conditions of employment." (Dkt. 26, at 33; PgID 281.)

Here, according to Plaintiff's deposition testimony, supervisors witnessed much of the harassing commentary and participated in some. Many previous female police officers had filed sexual harassment claims, reasonably alerting the police department to a potential problem, and yet no sexual harassment training ever took place. (Williams Trans., Dkt. 29-6, at 35; PgID 1449.) Instead, supervisors continued to ignore the obligations of the sexual harassment policy, some even participating in sexually explicit and degrading talk of women and girls. Chief Wilkewitz reported that Williams said "it was common for them to joke amongst themselves" when Williams explained his own inappropriate comments to Plaintiff, suggesting these types of comments were not the exception. (Wilkewitz Dep. p. 147.) The City knew Williams was accused of inappropriate comments, Williams even admitted some of them, and elected to still empower him to investigate Plaintiff's claim.

Viewing the evidence in a light most favorable to Plaintiff, Defendant is vicariously liable for the sexually explicit commentary of both supervisors and co-workers, and vicariously liable for the decision to appoint Williams, an accused harasser to investigate Plaintiff assault claims. It remains a genuine issue of material fact as to whether Defendant can be held liable for Cerroni's behavior.

Plaintiff's hostile work environment claim survives Defendants' summary judgment motion.

**C. Title VII Gender Discrimination**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer. . . .to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). In order to establish a *prima facie* case of sex discrimination, under the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Plaintiff must present sufficient circumstantial evidence to create an inference of gender discrimination. This requires Plaintiff show:

(1) she is a member of a protected class,

(2) she was subjected to an adverse employment action,

(3) she was qualified, and

(4) she was treated differently than similarly-situated male employees for the same or similar conduct. *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992)).

Defendant argues Plaintiff has failed to establish the second element, whether Plaintiff was subjected to an adverse employment action. Plaintiff's timely sex discrimination complaints include two alleged adverse actions (1) "[t]he intentional assignment of a reported harasser to investigate Plaintiff's claims of harassment" and (2) alleged problems with the substance of the investigation. (Pl. Compl. ¶ 59, Dkt. 1, at 11.) Plaintiff has not presented evidence that these constitute adverse employment actions. The Sixth Circuit "requires 'a materially adverse change in the terms and conditions of [a plaintiff's] employment,' such as a 'significant change in employment status.' " Block v. Meharry

Medical College, 723 Fed.Appx. 273, 278 (6th Cir. 2018) (quoting *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 1010)).  Neither of Plaintiff's alleged adverse actions resulted in a change to Plaintiff's employment.

"A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Bowman v. Shawnee State University*, 220 F.3d 456, 461-61 (6th Cir. 2000) (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). The Sixth Circuit further refined the definition of an adverse employment action stating it can result from a reassignment if one position is less challenging and more boring than another, or if one position is generally unskilled while another requires some specific training, even if the training is somewhat limited.  *Spees v. James Marine*, 617 F.3d at 392. Plaintiff presents no such change in her employment status.  Her wages, salary, title, duties, responsibility, work hours, and benefits as a result of Williams's appointment and investigation remain the same.

Plaintiff has not provided sufficient evidence to establish that she suffered an adverse employment action and thus cannot make her *prima facie* case.  The Court grants Defendant's motion for summary judgment on Plaintiff's sex discrimination count.

## D.  Title VII Retaliation Claim

Title VII prohibits an employer from retaliating against an employee who has engaged in protected conduct under the statute.  When a plaintiff lacks direct evidence and must rely on circumstantial evidence, retaliation claims are analyzed under the *McDonnell Douglas*

burden-shifting paradigm. *McDonnell Douglas Corp.*, 411 U.S. at 802. A *prima facie* case for retaliation, in violation of Title VII, requires the following elements:

(1) the plaintiff engaged in protected conduct;

(2) that this was known by the defendant;

(3) that the defendant took an employment action adverse to the plaintiff; and

(4) that there was a causal but-for-connection between the protected activity and the adverse employment action. *See In re Roriguez*, 487 F.3d 1001, 1011 (6th Cir. 2007); *Frazier v. Richland Public Health*, 685 Fed.Appx. 443, 450 (6th Cir. 2017).

Defendant does not dispute the first two elements. Plaintiff engaged in protected conduct under Title VII when she formally complained about Williams's and Cerroni's behavior to her superior and Defendant knew of Plaintiff's protected conduct. Defendant's summary judgment motion contends that Plaintiff did not establish she had suffered an adverse action, the third element of a *prima facie* case.

Unlike the Title VII sex discrimination claim discussed above, a plaintiff's burden in establishing a materially adverse employment action, in the retaliation context, is "less onerous." *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014). *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (the "burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met."); *Burlington Northern and Santa Fe Railway Company v. White*, 458 U.S. 53, 57 (2006) ("the antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace"). An adverse action here requires only that Plaintiff show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable

worker from making or supporting a charge of discrimination." *Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 596 (6th Cir. 2007) (quoting *Burlington Northern*, 548 U.S. at 68).

The Sixth Circuit emphasizes that the significance of any given act of retaliation depends on context. *Laster*, 746 F.3d at 731. The employment action must be materially adverse, as "it is important to separate significant from trivial harms," and "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern*, 548 U.S. at 68. In the summary judgment context, Plaintiff need only show that there is a question of fact, appropriate for the jury, that an employment action was materially adverse to Plaintiff.

Here, Plaintiff claims, among other alleged retaliations, that the "sham" investigation into her formal sexual harassment complaint was itself a form of retaliation. (Pl. Compl., Dkt. 1, at 10.) The Court agrees it is a question of fact whether a reasonable worker would find the substance of Defendant's investigation, including who was appointed to lead it, materially adverse. Williams was one of only two people Plaintiff had filed a formal complaint against. The Police Department's decision to appoint him to lead the investigation, in all likelihood meets this less onerous standard of adverse employment action. A reasonable employee very well may be dissuaded from making or supporting a charge sex discrimination if the person conducting the investigation, was also someone accused of the harassment. A reasonable employee would be less likely to bring such a charge of discrimination. *Caterpillar Financial Services Corp.*, 496 F.3d at 596. It is for the

jury to decide whether the Police Department's appointment of Williams falls into the category of just a minor annoyance.

Defendant's motion for summary judgment on Plaintiff's retaliation claim is denied.

**E.    Conclusion**

For the reasons thus stated, the Court GRANTS Defendant's motion for summary judgment as the Plaintiff's Sex Discrimination Claim and DENIES Defendant's motion for summary judgment as to Plaintiff's claims of hostile work environment and retaliation.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  August 13, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 13, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager